IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK MICHAEL FALCEY, JR.          :
      Plaintiff,                      :
                                      :
      v.                              :          CIVIL ACTION NO. 24-CV-2770
                                      :
BUCKS COUNTY, PENNSYLVANIA,          :
  *et al.*,                             :
      Defendants.                     :

<u>**MEMORANDUM OPINION**</u>

SCHMEHL, J.                                                    SEPTEMBER 16, 2024

    *Pro se* Plaintiff Patrick Michael Falcey, a prisoner currently incarcerated at SCI Chester, asserts claims against numerous Defendants associated with the Bucks County Correctional Facility and its medical contractor, PrimeCare Medical, Inc.[1]  The claims relate to medical personnel's alleged failure to respond to calls to assist Falcey while he suffered from seizures. Falcey seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Falcey leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice.  Falcey will be permitted to file an amended complaint.

## I.     FACTUAL ALLEGATIONS[2]

    Falcey names the following Defendants in his Complaint:    (1) Bucks County, Pennsylvania; (2) the Bucks County Correctional Facility ("BCCF"); (3) Primecare Medical, Inc.;

---

[1] Falcey was a convicted prisoner at the Bucks County Correctional Facility during the events giving rise to his claims.  In November of 2021, he pled guilty to crimes in *Commonwealth v. Falcey*, CP-09-CR-0005656-2020 (CP Bucks).

[2] The facts are taken from Falcey's Complaint (ECF No. 1), which consists of eight typed pages and over 16 exhibits.  The Court adopts the pagination supplied by the CM/ECF docketing system.

(4) Medical Services, Bucks County Prison; (5) Carl Mettellus, Warden, Bucks County Prison; (6) David Kratz, Director Bucks County Prison; (7) Robert Harvie, Jr. Chairman Bucks County Prison Oversight Board; (8) Christopher Norfleet, Health Service Administrator, Primecare Medical Inc.; (9) Lee Ann Reynolds, Registered Nurse, PrimeCare; (10) Inna Panasenko, Registered Nurse PrimeCare; (11) Paula Erisman, Registered Nurse, Primecare; (12) Kristin Hill, Assistant Health Service Administrator, PrimeCare; (13) John/Jane Doe, Medical Services, Bucks County Prison. (Compl. (ECF No. 1) at 2-3.) All Defendants are sued in their individual capacities. (*Id.* at 3.)

Falcey has a medical history of seizures, chronic pain, and mental health diagnoses. (*Id.*) He alleges that BCCF and PrimeCare medical staff were aware of his medical history. (*See id.* at 5, 13.) On June 26, 2022, just before 6:00 a.m., Falcey began to have seizures and convulsions. (*Id.*) While on the ground, Falcey "yell[ed]" that he was suffering a medical emergency. (*Id.*) Despite experiencing continued seizures, over the next several hours, no medical staff arrived to aid Falcey even though Falcey was repeatedly told by correctional officers that medical personnel were notified and that they were "on the way." (*Id.*) At approximately 10:00 a.m., Falcey, who was still suffering convulsions and seizures, was told to move to another cell on the top tier because his housing unit was needed for "another housing matter." (*Id.*) Due to his condition and despite help from other inmates, Falcey could not walk to the other cell to which he was transferred, but instead lay in a convulsing state in a different cell. (*Id.* at 4.) While in the vacant cell, Falcey was "falling/dropping forward and backwards from having dozens of seizures and convulsions" and "badly bit[ his] tongue." (*Id.*) At some point, he became "unresponsive." (*Id.*) Falcey states that he "rose" at approximately 5:00 to 6:00 p.m., nearly twelve hours after his symptoms began, and "hobbled" to shift command where he was told by a Sergeant to "head straight" to the medical department. (*Id.*) At the medical department, he was placed on a 72-hour medical watch status

and given high doses of Ibuprofen. (*Id.*) Falcey claims that because he did not receive medical attention for his seizures during a twelve-hour period, he suffered a "badly bitten tongue" and an injured and "badly bruised" back, both of which caused "high levels of pain." (*Id.* at 5.)

Falcey also alleges that his medical charts had been "falsified" and that he received "incomplete" records after requesting them. (*Id.*) He claims that the records had been falsified in part due to Defendants Reynolds and Panasenko "falsely accus[ing]" him of "diverting his medication." (*Id.* at 6.) Falcey also alleges that in August of 2022, Defendant Hill "for no apparent reason" placed Falcey on an eight-day "segregated medical watch status."[3] Falcey also states that Hill committed "theft" by deducting $40 from his prison inmate account for sick call requests that were never answered. (*Id.* at 5.) Based on these facts, Falcey alleges Eighth Amendment deliberate indifference claims and seeks money damages. (*Id.* at 8.) He also seeks a declaration that the acts he described in his Complaint violated his constitutional rights and seeks a preliminary and permanent injunction ordering the medical staff at the BCCF to "provide adequate and constitutionally required medical care."[4] (*Id.* at 7-8.)

---

[3] In the denial of Falcey's grievance about being placed on medical watch status, prison personnel advised Falcey that he was placed on "Level 2 medical for closer observation" because he had submitted "multiple sick call slips claiming [he was] experiencing agonizing pain" and that the "measures were taken to determine if there were any underlying issues that may be causing the pain." (Compl. at 26.)

[4] Falcey's request for a declaration will be dismissed with prejudice because declarations are "inappropriate solely to adjudicate past conduct," and are not "meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). Falcey's request for a preliminary and permanent injunction will also be dismissed with prejudice. The request is now moot because Falcey has been transferred out of the Bucks County prison system. *See Robinson v. Cameron*, 814 F. App'x 724, 725 (3d Cir. 2020) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody); *Griffin v. Beard*, 401 F. App'x 715,

## II.    STANDARD OF REVIEW

The Court grants Falcey leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5]    Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, ___ F.4th ___, 2024 WL 3820969 (3d Cir. Aug. 15, 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Falcey is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").

[5] Because he is a prisoner, Falcey will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

## III.   DISCUSSION

Falcey asserts Eighth Amendment claims under § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.   Claims against the BCCF and "Medical Services, Bucks County Prison"

Falcey names the BCCF and "Medical Services, Bucks County Prison" as Defendants.  The Court must dismiss any claims asserted against the BCCF because a jail or correctional facility is not a "person" under § 1983. *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010).   In addition, the Court must also dismiss "Medical Services, Bucks County Prison" as a Defendant because a prison medical department is also not a "person" for purposes of § 1983 liability. *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845-46 (3d Cir. 2011) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (*per curiam*). Accordingly, Falcey's claims against these Defendants must be dismissed with prejudice because the correctional facility and a prison medical department are not legal entities susceptible to suit. *See Cephas*, 2010 WL 2854149, at *1; *Ruff*, 441 F. App'x at 845-46; *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (*per curiam*) (affirming dismissal of claims

5

against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)).

**B.      Eighth Amendment Claims Against the Individual Medical Defendants –
Reynolds, Panasenko, Erisman, Hill, Norfleet, and John/Jane Doe**

Falcey also asserts Eighth Amendment deliberate indifference claims against various medically trained individuals:  (1) PrimeCare nurses Reynolds, Panasenko, and Erisman; (2) Assistant Health Service Administrator Hill; (3) PrimeCare Health Service Administrator Norfleet; and (4) John/Jane Doe, with "Medical Services, Bucks County Prison."  To state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety."  *Id.* at 837.  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

Falcey alleges that, on June 26, 2022, during the twelve-hour period that he needed medical assistance for seizures and convulsions, he received "no medical aid to his condition of urgency." (Compl, at 5.)  He further states that John/Jane Doe and the Medical Staff knew that he "had a serious medical need" but that "staff failed to take any action to aid" Falcey despite his "obvious

need for medical attention." (*Id*.)  Assuming that Falcey's medical needs were serious, and construing the allegations liberally, the allegations nevertheless fail to support a plausible claim that any of the individually named medical defendants were deliberately indifferent to his medical needs.  This is because Falcey fails to sufficiently tie his allegations of alleged deliberate indifference to any of the named Defendants.  As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Falcey simply refers to all individual medical defendants collectively (e.g., "medical staff") and alleges in conclusory fashion that they were deliberately indifferent to his serious medical needs by not coming to his aid on June 26th.  Falcey does not allege, however, any specific facts about each of the individual medical defendants' involvement, including whether they were at the BCCF at the time of Falcey's medical emergency or otherwise had notice of a need for their medical assistance.  The allegations do not support a reasonable inference that each of the individual medical defendants were aware of and disregarded an excessive risk to Falcey's health or safety.  Accordingly, the Eighth Amendment claims against Reynolds, Panasenko, Erisman, Hill, Norfleet, and John/Jane Doe will be dismissed.

C.      **Due Process Claim against Hill**

Falcey alleges that Hill committed "theft" by having $40 deducted from his inmate account for sick call requests that were never answered.  Liberally construing the Complaint, the allegations are best understood as asserting a deprivation of property claim in violation of the Fourteenth Amendment.  Under the Fourteenth Amendment, an inmate has a protected property interest in the funds held in his inmate account. *See Hale v. Beard*, 168 F. App'x 532, 534 (3d Cir. 2006) (*per*

*curiam*) (citing *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002); *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997) (holding that an inmate is "entitled to due process with respect to any deprivation of this money."). However, even if a state actor intentionally or negligently deprives an inmate of inmate funds, "that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available." *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (citing *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984)). Adequate post-deprivation remedies include the ability to file a state tort action or use of the prison's grievance process. *See Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010); *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies). Therefore, even if the $40 deducted from Falcey's inmate account to cover the sick call requests could be considered a "theft," it does not rise to the level of a constitutional violation because adequate post-deprivation remedies were available to Falcey. Accordingly, to the extent that Falcey intended to assert Fourteenth Amendment due process claims, those claims will be dismissed with prejudice.

### D.    Claims against Bucks County and PrimeCare

Falcey names as Defendants Bucks County and PrimeCare, a company under contract to provide medical services to the BCCF. His claims against both Defendants cannot proceed as pled. To plead a basis for municipal liability against Bucks County under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Similarly, to plead a § 1983 claim against a prison medical provider, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Bd. of the Cnty.*

*Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (stating that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability'"); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)).[6] "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (*citing Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850).

---

[6] "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A plaintiff may also state a basis for a municipal liability claim in this context by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019). Falcey has not alleged that he was injured due to a failure to supervise, train, or discipline.

Falcey has not tied his allegations of deliberate indifference to a custom or policy of Bucks County or PrimeCare.  Instead, Falcey makes vague, generalized, and conclusory allegations in support of his claims.  He alleges that these Defendants were "guilty of a pattern of abuse by deliberately indifferent acts of retaliation" and that they "had a policy that they themselves by deliberately indifferent acts and omissions of bad faith did not follow" which caused Falcey to suffer "cruel and unusual punishment."  (Compl. at 7.)  Allegations such as these, that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible *Monell* claim.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under *Monell*"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018).  Accordingly, Falcey's claims against Bucks County and PrimeCare are not plausible as pled and will be dismissed without prejudice.

### E.  Claims Against Supervisory Defendants – Mettellus, Kratz, and Harvie

Falcey names as Defendants various high-ranking Defendants within the Bucks County prison system.  For example, he names Mettellus and Kratz, the respective Warden and Director of Bucks County Prison.  He also names Harvie, the Chairman of the Bucks County Oversight Board.  Falcey bases his claims against these Defendants on allegations that they, "by virtue of their office and authority," had "the power to ensure that medical and prison staff [were] not deliberately indifferent" to his serious medical needs.  (Compl. at 7.)  He further alleges that they "failed to prevent the deliberate indifference" to his serious medical needs "by not assuring" that the individual medical staff members "would not have intentionally refused to provide adequate

10

medical care." (*Id.*)  Supervisors are not liable for alleged constitutional violations committed by their subordinates simply because they employ them.  *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 22015) (holding that liability under § 1983 cannot be predicated on a *respondeat superior* basis).  To the extent that Mettellus, Kratz, or Harvie are named as Defendants simply due to their high-ranking positions, this is not sufficient to state a plausible claim.  *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).  Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  This type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure."  *Id.* at 317; *see also Chavarriaga*, 806 F.3d at 227.  A supervisor may also "be

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Falcey's allegations against Mettellus, Kratz, and Harvie are far too conclusory to state a plausible § 1983 claim. Falcey does not allege any facts explaining how these Defendants were personally involved in or were aware of any of the events giving rise to his deliberate indifference claims. Nor has Falcey identified any specific defects in these Defendants' supervision or training that would amount to deliberate indifference to his serious medical needs. *See Aruanno v. Corzine*, 687 F. App'x 226, 229 (3d Cir. 2017) (*per curiam*) (claims that supervisors failed to train, supervise, or discipline subordinates failed when plaintiff "did not show that the Defendants were aware of the violations alleged in his complaint, either before or after they occurred"); *see also Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (noting that generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or agency are insufficient to allege personal involvement in an underlying constitutional violation). Accordingly, Falcey's claims against Mettellus, Kratz, and Harvie are not plausible as pled and will be dismissed without prejudice.[7]

---

[7] To the extent that any of Falcy's claims against the Supervisory Defendants are based on how they handled or responded to his grievances, the claims are not plausible. Generally, claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).

IV.     **CONCLUSION**

For the foregoing reasons, the Court will grant Falcey leave to proceed *in forma pauperis*, and dismiss his Complaint in part with prejudice and in part without prejudice. Falcey's claims against the BCCF and "Medical Services, Bucks County Prison," and the Due Process claim will be dismissed with prejudice. The remainder of his claims will be dismissed without prejudice. The Court will permit Falcey an opportunity to file an amended complaint in the event he can address the defects the Court has noted as to his claims that were dismissed without prejudice. The Court will also deny without prejudice as premature Falcey's request for the appointment of counsel.[8]

An appropriate order follows that provides further instruction on amending his claims if Falcey wishes to do so.

BY THE COURT:

JEFFREY L. SCHMEHL, J.

---

[8] Falcey's request for the appointment of counsel is premature at this stage of the litigation because his case has not yet passed the screening stage under 28 U.S.C. § 1915. Falcey's amended complaint has not yet been filed or screened by the Court for merit. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim"). The Court will therefore deny Falcey's request without prejudice. Falcey may renew his request after such time has his amended complaint, if he files one, has been screened for merit. If Falcey chooses to file a renewed motion, he should do so in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*.